CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
October 30, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISCTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HEATHER KEEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:25-cv-00474 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| JUDGE ROBERT | ) | Chief United States District Judge |
| LOUIS HARRISON, JR., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pro se plaintiff Heather Keen moves for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1). For the reasons set forth in this opinion, the court will grant Keen's amended motions for leave to proceed *in forma pauperis* (ifp). (Dkt. Nos. 6, 7.) It also will dismiss her claims against two of the defendants—two state-court judges—with prejudice, dismiss her claims against a third defendant with prejudice, and dismiss without prejudice her federal claims against the fourth and final defendant.[1] The court also will deny her motions for leave to amend. Lastly, the court addresses her numerous other pending motions.

## I. BACKGROUND

### A. Keen Qualifies for *In Forma Pauperis* Status.

On July 16, 2025, Keen filed her original complaint (Dkt. No. 1) and an application to proceed ifp under 28 U.S.C. § 1915(a)(1) (Dkt. No. 2.) On July 29, 2025, the court denied without prejudice Keen's motion for leave to proceed ifp because the application contained incomplete information. (Dkt. No. 5.) The same day, Keen filed a revised motion for leave to

---

[1] The operative complaint (the First Amended Complaint, Dkt. No. 8) refers to the Virginia Freedom of Information Act, but it does not appear to assert a separate claim pursuant to that statute, nor does it assert any other obvious state-law claims. Nonetheless, to the extent that Keen intended to assert state-law claims, the court will decline to exercise jurisdiction over such claims after dismissing all federal claims. 28 U.S.C. § 1367(c)(3).

proceed ifp. (Dkt. No. 6.) The following day, Keen filed an amended motion for leave to proceed ifp (Dkt. No. 7), and she filed an amended complaint, which largely reiterates the allegations contained in her original complaint. (Dkt. No. 8.)

To support her first two pending motions to proceed ifp, Keen completed a preprinted form responding to certain questions about the state of her finances under penalty of perjury. (Dkt. Nos. 6, 7.) The court has reviewed Keen's responses and determines that Keen cannot afford to pay the filing fee. It will therefore grant Keen's motions to proceed ifp (Dkt. Nos. 6, 7) and allow her complaint to be filed without payment of the filing fee.[2] Her subsequently filed second amended motion for leave to proceed ifp (Dkt. No. 17) will be denied as moot.

### B. Factual Allegations and Claims in The First Amended Complaint

The court is treating Keen's amended complaint (Dkt. No. 8) as the operative complaint, which she was permitted to file without leave of court under Rule 15(a). Keen has since attempted to amend her complaint twice, but the court will not permit those amendments for the reasons set forth *infra* at Sections I-C and II-A. Because Keen's first amended complaint will be the operative complaint, the court discusses here the allegations and claims in that complaint.

Keen's amended complaint consists of both a completed form in which she answered pre-printed questions (Am. Compl., Dkt. No. 8) and her own typed complaint, which she attached to the first document. (Att. to Am. Compl., Dkt. No. 8-1.) Keen asserts claims against four defendants, all of whom are associated with state courts in Bedford County, Virginia, where

---

[2] The day after she filed a revised ifp motion with sufficient detail, Keen filed her "amended" motion that also includes more than sixty pages of exhibits containing various financial documents, such as her 2022 tax returns. (Dkt. No. 7.) None of that documentation is required or necessary to support an ifp application, and the court need not consider it. Additionally, immediately after Keen complains that she "was told," presumably by a deputy clerk, that she did not need to submit the "long form" ifp application, she writes, "Denial of support[;] denial of discovery." (Dkt. No. 7-2.) To the extent she is suggesting she was given inaccurate information, she is incorrect. As the clerk advised her, she did not need to submit the long form application. But she was required to answer the questions in the short form with sufficient information to allow the court to evaluate her claim that she is unable to pay. Her original ifp application (Dkt. No. 2) failed to do so and consequently was denied.

Keen was involved in "multiple legal matters," including custody and visitation disputes over her son, motions to compel financial disclosures, probate estate administration on behalf of her mother's estate, and "appeals related to procedural rulings." (Att. to Am. Compl. 3.) The defendants are: (1) Judge Robert Louis Harrison, Jr., a judge of the Juvenile and Domestic Relations (J&DR) court in Bedford County; (2) Judge James W. Updike, Jr. of the Bedford County Circuit Court; (3) Judy Reynolds, the Clerk of the Bedford County Circuit Court; and (4) Kim Terry, identified by Keen as "Chief Probate Officer." (Am. Compl. 1.) Although her amended complaint is not entirely clear on the point,[3] the court will assume for purposes of this opinion that Keen is bringing claims against all of them in both their individual and official capacities.

Her complaint alleges claims under 42 U.S.C. §§ 1983 and 1985,[4] all of which appear to arise from her participation in a custody case concerning her son in J&DR court and in probate proceedings over her mother's estate in Bedford County Circuit Court. Her complaint often seems to lump together both the custody proceedings and the probate actions, but she does not name any defendants related to the J&DR case except Harrison. The other defendants were all involved, in one way or another, in the probate proceedings.

In completing the  standard complaint form for a violation of civil rights, she first sets forth the following facts:

---

[3] In one place in Keen's amended complaint, she asserts that she is suing all four individuals only in their official capacities, but in two others, she states that she is suing them all in both their individual and official capacities. (*Compare* Am. Compl. 2–3 (both capacities) *and* Att. to Am. Compl. 1 (both capacities) *with* Att. to Am. Compl. 3 (official capacities only).)

[4] Despite Keen's reference to Section 1988 (Am. Compl. 3), that provision simply allows attorneys' fees to the prevailing party in certain cases. Based on her allegations and her subsequent proposed complaints, the court believes she meant § 1985, which prohibits conspiracies to violate certain civil rights.

After being threatened for 5 months by absent/just released from prison absent/abandoned non-custodial problem, I filed in J&DR court to establish custody and support (no orders had ever been in need of seeking). I was "gaged". Proceeding lasted 7minutes, support denied, guidelines not followed, simply mean and alarming. Attempted to file Motion of Clarification in order to understand why and how-- almost got arrested in process of finally having to demand the file, the clerk demanded I also file a review standard form -- I did but strongly stated I wanted 2 separate instances to get a grasp on things, I was denied, date April 29, 2025-- for "pre-trial findings" Silenced again, disregarded motion, expressed aggravation, removed motion for docket stating it would be addressed at 1.25 hour trial, dismissed court, continued to parlay with defendant, ordered me to go fill out papers for GAL, bailiff brought paper with orders to go to class that I had already taken, ordered visitation even though the defendant had once again abandoned, neglected, maliciously, many threats, was not permitted to return into the courtroom, Filed a De Nova Appeal due to the orders being given in Circuit court.

(Am. Compl. 4.)

In general terms, Keen believes that she was treated unfairly both by the jurists and by Reynolds. As for defendant Terry, Keen alleges that she was acting in a fiduciary capacity and that she "failed to investigate and disclose critical financial records, . . . enabling the concealment of estate assets." (Att. to Am. Compl. 3, 9.) Keen asserts that she was excluded from her son's custody hearing, which violated her due process rights, she has been denied documents sought under the Virginia Freedom of Information Act, she has been denied appropriate explanations for rulings, and the clerk's office staff (seemingly in both courts) have refused to accept documents she attempted to file and otherwise mocked or ignored her. Keen claims that, collectively, these actions have denied her "the opportunity to fairly present her claims and protect her legal rights, causing emotional distress, financial harm, and ongoing legal confusion." (Att. to Am. Compl. 4.)

Her amended complaint lists a number "causes of action," all of which are brought pursuant to 42 U.S.C. § 1983, although the claims do not always specify against whom they are being asserted. The court lists them below (using Keen's titles) with a summary of the facts underlying each, as best it can discern. The court notes, too, that some of the claims appear to be duplicative, or at least to overlap in part.

**I. "Denial of Procedural Due Process (Custody Hearing Exclusion)" (Fourteenth Amendment)**: Judge Harrison denied her procedural due process rights when he dismissed her court proceedings, "gave orders while out of the courtroom," excluded her from the proceedings, and "show[ed] immense favor with no reasoning." (Att. to Am. Compl. 6.)

**II. "Denial of Access to the Courts (Clerical Obstruction)" (First and Fourteenth Amendments):** Unnamed clerks in the J&DR court refused to file her motions and wanted her to use only the standard forms they had, "which did not apply." She has not named any of these individuals as defendants, and it is unclear whether she is seeking to hold Judge Harrison responsible for these actions. (*Id.*)

**III. "Arbitrary Denial of [Virginia Freedom of Information Act], written findings, motion of clarification, and Court Records" (Fourteenth Amendment):** Judge Harrison refused to give reasons for his orders and the denial of support or visitation, he removed her motion to clarify from the docket, "tax documents were refused," and support was ordered with no documentation or reasoning. His actions denied the safety of her son and compromised the guardian ad litem because Judge Harrison "turn[ed]" the guardian ad litem "into his own tool." (*Id.* at 6–7.)

**IV. "Probate Office Obstruction and Document Rejection" (No Amendment listed)**: After Keen learned that Judge Updike's denial of her motion was "final," she prepared documents to submit but defendant Reynolds, acting as Clerk, obstructed her efforts to file certain probate documents and instead rejected "all estate[-]related submissions . . . without legal justification." (*Id.* at 7.)

**V. "Failure to Process Appeals and Motions" (No Amendment Listed):** This claim appears to have been brought against both judges. Keen claims that Judge Harrison "refused appeal" and that, after the appeal was filed in the circuit court, the date was incorrect and that Judge Updike came into the courtroom for a hearing "confused" and suggested it was improper to come into circuit court without legal representation. (*Id.* at 7–8.)

**VI. "Systematic Administrative Obstruction" (First and Fourteenth Amendments):** Keen was denied access to information and procedures necessary to participate in the Circuit Court docket calls, and unnamed court staff failed to provide her with instructions or opportunities to have hearings scheduled, which impaired her access to the court and her ability to obtain timely relief and file probate forms in a timely fashion. (*Id.* at 8.)

Based on other portions of her complaint, this appears to be a claim against Judy Reynolds. (*See* Am. Compl. 4 (accusing Reynolds of "Systematic Administration Obstructions" that were "intentional, like a sly snake").)

**VII.  "Unlawful Gag or Silencing Order/Denial of Right to be Heard" (No Amendment Listed):** No names or additional facts are included as to this claim, but the court believes it is duplicative of Claim I and/or Claim V. (*Id.*)

The next page of Keen's attachment separately references Fifth Amendment and Sixth Amendment violations, although they appear to be based on the same facts as her earlier claims. Nonetheless, the court will construe them as separate claims and will refer to them as Claims VIII and IX, although they are not labeled as such.  They are:

**VIII.  (Fifth Amendment):** Keen's due process rights were violated when she was deprived of her property rights in the estate because of defendants' refusal to grant hearings or compel discovery, and their obstruction of the "probate process." (*Id.* at 9.)

**IX. (Sixth Amendment):** Judge Updike refused to hear motions and denied Keen's motion to compel, stating that as a pro se litigant she could not participate in the proceeding.  Judy Reynolds failed to process motions and obstructed Keen's access to "judicial review."  Executor Kim Terry "failed to investigate and disclose critical financial records, further enabling the concealment of estate assets." (*Id.*)

For relief, Keen asks for: (1)  a declaration that defendants violated her constitutional rights under the First, Fifth, Sixth, and Fourteenth Amendments; (2) issue a temporary restraining order "enjoining the enforcement custody orders issued without the Plaintiff present or proper service to stop something awful terrible;" and (3) "$100K per violation." (Am. Compl. 5.)

## C.  The Proposed Second and Third Amended Complaints

Since filing her permitted amended complaint Keen has filed a second amended complaint (Dkt. No. 11) and a third amended complaint, titled as "proper form/amended complaint." (Dkt. No. 14.)  But she may not file either of these without leave of court, which she

has not obtained.  *See* Fed. R. Civ. P. 15(a)(2).  Thus, the court will treat both of those filings as motions to amend or motions for leave to file and will consider the filings as her *proposed* second and third amended complaints, respectively.

The motion for leave to file the third amended complaint will be denied—without the court performing a futility analysis as to the claims—for several reasons.  First, as already noted, the filing of multiple amended complaints without leave is not permitted under the rules, and Keen has failed to identify any reason why she should be granted leave to amend.  Second, the court's preliminary review of her proposed third amended complaint suggests that the pertinent factual allegations are duplicative (or nearly duplicative) of at least her second amended complaint, which the court is not granting leave to amend because amendment would be futile.[5] For these reasons, the court will deny the motion to amend to add a third proposed amended complaint.  (Dkt. No. 14.)

The court will conduct a futility analysis of the second proposed amended complaint (Dkt. No. 11), which it does at Section II-A *infra*.  Here, though, it will briefly describe Keen's allegations in that version of her complaint and the differences between it and the first amended complaint.

Keen's proposed second amended complaint begins with a long, often rambling narrative of "system corruption" in Bedford County, how various entities and judiciary actors, including a church, all "gas lit" plaintiff and "gas lit" the store she owned.  (Proposed 2d Am. Compl. 4–8, Dkt. No. 11.)  She also references rumors of "pedophilia activity, along with fear of what Bedford County officials are capable of."  (*Id.* at 6.)

She does not begin to discuss the specific factual allegations on which her claims against

---

[5] The court also notes that it had nearly completed its review of her proposed second amended complaint, filed on September 16, 2025, and had begun analyzing those claims when Keen filed the next one, on October 22, 2025.  Thus, the primary effect of her repeated filings has been to prolong review of her case.

the named defendants are based until page 9 of the document.  Her allegations fall into three general categories: (1) claims arising from custody proceedings before Judge Harrison in J&DR matters (*see generally id.* at 9–16); (2) claims related to the probate proceedings for her mother's (and possibly father's) estate and trust (*see generally id.* at 16–20); and (3) claims related to a dispute she had with an individual in the community (which she ties to the pedophilia conspiracy in Bedford County and her attempts to protect children); the dispute eventually led to a physical altercation and Keen's convictions for assault and trespassing in Bedford County General District Court before Judge Krantz.  (*See generally id.* at 20–22; *see also* Dkt. No. 19 at 1 (§ 2254 habeas petition Keen filed indicating that those were her criminal convictions).)

In terms of changes from the first amended complaint, the claims from this third category are new to her proposed second amended complaint.  The latest two proposed complaints also purport to add two additional plaintiffs (Keen's minor children).  In her latest version only (the third proposed amended complaint, which the court already has said it will not give her leave to file), she also adds as a purported plaintiff "The Estate/Trust of Christopher W. And Jacquelyn H. Keen," referring to Keen's deceased parents.

Her latest two proposed complaints also seek to add additional individuals as defendants. First, she names persons who were involved in the J&DR case where she and the children's father were disputing custody over at least one minor child.  These individuals include the father and grandparents of her children (collectively the Lewises) and the person who was appointed as the guardian ad litem for at least one of the children.  The complaints also name as defendants one more Bedford County judge (Judge Krantz, of the Bedford County General District Court) and Wes Nance, a state prosecutor who prosecuted the criminal charges against Keen.  (*See generally* Dkt. Nos. 11, 14.)

After setting forth those facts, she lists "grounds" for relief separately against each

defendant, which appear to be her legal claims, although she also lists general actions therein without tying them to specific allegations.  As best the court can tell (and ignoring statutes that do not provide a private cause of action, such as 28 U.S.C. § 144, a federal recusal statute inapplicable to state-court judges), she is asserting claims under § 1983 (asserting violations of the First, Fifth, and Sixth Amendments), a conspiracy to violate her federal rights under § 1985, and perhaps state-law claims of "conspiracy" and "tortious interference."  (*Id.* at 23–24.)  As she did with her prior complaints, she asks the court to "immediately enjoin[] the enforcement" of the state court's custody order, and she now also asks for a similar order as to her criminal charges and fines.  She also seeks compensatory and punitive damages, among other relief.[6]

## II.  DISCUSSION

The Court turns first to why it will not grant leave to amend to file the second proposed amended complaint.  The court then will screen the first amended complaint (Dkt. No. 8) under 28 U.S.C. § 1915(e).

### A.    The First Amended Complaint Will Remain the Operative Complaint Because The Court Denies Leave to Amend to File the Second Amended Complaint.

In addressing the motion to amend, the court first notes that Keen's proposed amendment to include additional plaintiffs must be denied as futile.  As a pro se litigant, Keen may not bring claims on behalf of the other named plaintiffs.  First, she may not prosecute claims pro se on behalf of her minor children.  *Myers v. Loudoun Cnty. Public Schools*, 418 F.3d 395, 401 (4th Cir. 2005) (stating the rule and explaining its purpose of ensuring that a child's "interests are not prejudiced by their well-meaning, but legally untrained parents"); *M.D. v. School Bd. of City of Richmond*, 560 F. App'x 199, 200 (4th Cir. 2014) ("[N]on-attorney parents are not authorized to

---

[6]  Some of the other requested relief does not require any discussion and is frivolous.  For example, she asks the court to charge defendants in commissions of crimes—a function this court does not perform—and asks the court to "[r]ule Judge Harrison, tyrant, with all consequences expected upon."  (Proposed 2d Am. Compl. 25.)

represent their children pro se in federal court.").

Similarly, courts have stated that a pro se plaintiff like Keen may not represent an estate, at least where the individual is not the sole beneficiary. *Witherspoon v. Jeffords Agency, Inc.*, 88 F. App'x 659, 2004 WL 370230, at *1 (4th Cir. 2003) (citations omitted); *J. Doe, as personal representative, Plaintiff v. Augusta Univ.*, No. CV 8:23-CV-6873-RMG-WSB, 2025 WL 2918366, at *13 (D.S.C. Sept. 12, 2025) (collecting authority holding same), *report and recommendation adopted sub nom. Doe v. Augusta Univ.*, No. 8:23-CV-6873-RMG, 2025 WL 2778474 (D.S.C. Sept. 30, 2025). And Keen's filings—considered in their entirety—clearly indicate at least a dispute concerning the persons who are proper beneficiaries of her parents' respective estates. Thus, Keen may not represent either estate pro se. *See Witherspoon,* 2004 WL 370230, at *1.

For these reasons, the court will direct the Clerk to dismiss without prejudice and strike from the docket all plaintiffs other than Keen. Any claims purportedly brought on their behalf will be dismissed without prejudice. If Keen wishes to pursue claims on behalf of her minor children or the estate in this court, she must do so *through counsel*.

### 1. Joinder of three unrelated categories of claims and defendants is improper.

Regarding the three categories of claims the court has identified in the proposed second amended complaint, these disparate categories of claims against these disparate defendants, all of which arise from different sets of facts, are not properly joined in a single lawsuit. Indeed, each category arises from a different state-court case and is based on entirely different factual circumstances, and there is no overlap in defendants as to the three categories. The only common threads seem to be that they occurred in Bedford County and involved legal proceedings with results adverse to Keen. Thus, joinder of these claims and defendants is not permitted under Federal Rule Civil Procedure 20(a)(2)(A), which allows defendants to be joined

in a single action only if a right to relief "is asserted against them . . . with respect to or arising

out of the same transaction, occurrence, or series of transactions or occurrences."

Although it could do so, the court declines to sever the suit into three different lawsuits,

primarily because that would only delay resolution of Keen's claims. It would require either the

Clerk to open two new lawsuits or require Keen to refile lawsuits and seek *ifp* status again.

Under either scenario, Keen would likely file more motions in cases where there would be no

reason to allow them. While it does not sever, though, the court does treat each category of

claims as a separate case in analyzing whether there is jurisdiction. Thus, although not

technically being assigned new case numbers, the reader may think of them as Case Nos. 7:25-

cv-474A, 7:25-cv-474B, and 7:25-cv-474C.

### 2. Analysis of claims in each category

#### a. *Claims related to the custody proceedings and J&DR case*

Turning to the first category (the claims that would constitute Case No. 7:25-cv-474A),

they all relate either to Kevin Lewis' alleged unfitness to have custody of the two Keen children

or to alleged improprieties by Judge Harrison. For example, Keen alleges she was not permitted

to speak at the custody hearing in violation of her Fifth Amendment rights. She also accuses

Judge Harrison of having ex parte discussions with members of the Lewis family. And she

accuses Judge Harrison of abusing his discretionary rights and violating the rights given to

parents and children. She also appears to allege that members of the Lewis family have violated

a visitation order.

Judge Harrison is entitled to absolute judicial immunity as to the claims against him, as

discussed in more detail at Section II-B-1 *infra*. Thus, as to this group of claims, this leaves only

her allegations against the three Lewis defendants and the guardian ad litem.

Other than asserting that all the defendants are involved in a civil rights conspiracy

claim—an assertion that is not sufficiently supported with concrete, plausible factual allegations—Keen offers nothing to assert a *federal claim* against the Lewises.  To state a claim under § 1983, a plaintiff must allege both the violation of a right secured by the Constitution and laws of the United States and must show that the defendant who committed the wrong was acting under color of state law.  *Loftus v. Bobzien*, 848 F.3d 278, 285 (4th Cir. 2017).  Because neither the Lewises nor the guardian ad litem acted under color of state law, a § 1983 claim against them will not lie.  *Vyas v. Sofinski*, No. 7:23-CV-00075, 2023 WL 3562976, at *4 (W.D. Va. May 19, 2023), *aff'd in relevant part,* No. 23-6561, 2023 WL 6058479 (4th Cir. Sept. 18, 2023) (explaining that other parties to a family law proceeding and a guardian ad litem do not act under color of state law for § 1983 purposes); *Lester v. Broadwell, Gillespie Nimmo, P.C.*, No. 23-cv-00060, 2023 WL 2589678, at *2 (W.D. Va. Mar. 21, 2023)  (dismissing § 1983 claim against guardian ad litem because the individual did not act under color of state law); *Serdah v. Edwards*, No. 7:11-cv-00023, 2011 WL 3849703, at *2 (W.D. Va. Aug. 30, 2011) (same and collecting authority).[7]  Because no federal claims lie against any of the defendants involved in the first group of claims, all that is left (at best) are state-law claims, and the court will decline to exercise jurisdiction over them.  *See* 28 U.S.C. § 1367(c).

      *b.  Claims related to probate court proceedings*

      The claims in the second category (fictional case No. 7:25-cv-474B), all arise from what

---

[7]  The court recognizes that purely private actors who conspire with an immune state court judge nonetheless may have acted under color of state law.  *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).  But a plaintiff must do more than use the words "conspiracy" to invoke this principle.  To adequately state a claim for a civil rights conspiracy, a plaintiff must allege *facts* to support that the defendants acted jointly in concert, formed an agreement, and that each member shared the same conspiratorial, unlawful objective.  *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir. 1996).  Importantly, a plaintiff's allegations must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation.  *Hinkle,* 81 F.3d at 422.  Here, Keen's allegations are capable of innocent interpretation: a JD&R judge evaluated the evidence and made a custody determination.  Plaintiff's allegations are not sufficient to allege a conspiracy between Judge Harrison, the Lewises, and the guardian ad litem, so as to find that the others acted under color of state law.

occurred in the Bedford County Probate Court and are duplicative of what Keen alleged in her first amended complaint.  For the same reasons those claims are subject to dismissal as against Judge Updike, defendant Kim Terry, and defendant Reynolds, *see infra* Section II-B, the claims in her second proposed amended complaint against those same defendants are also futile, and so amendment will not be permitted.

   *c. Claims related to the criminal proceedings*

   The claims in the third category (fictional case No. 7:25-cv-474C) are entirely new and have not previously appeared in Keen's earlier complaints.  As noted, Keen describes a feud with another individual in which that individual "gang stalked" Keen and took actions such as throwing trash in front of Keen's driveway and posting disparaging social media statements.  On March 21, 2025, the party "propelled an object" into Keen's vehicle, and Keen alleges that she stopped her vehicle and "'handled' the persistent situation."  (2d Am. Compl. 21.)  Apparently, she wanted criminal charges brought against the individual, and there were criminal proceedings in Bedford County General District Court arising from the incident.  (*Id.*)

   Initially, the proposed resolution of the cases was that no charges would be filed against either party (although Keen had already spent some unspecified amount of time in jail), but she was not satisfied with that outcome.  When she filed a motion to rehear the case or for a retrial, Judge Krantz "warned" her that the matter would be heard anew and that jail time was likely.  (*Id.*)  Ultimately, Wes Nance, the prosecutor, went forward with charges and Judge Krantz convicted her of both assault and trespassing.  Based on these events, Keen questions the defendants' impartiality, asking rhetorically whether either "has any relations or dealings" with Keen's sister, with whom she is clashing over her parents' estate or assets.  (*Id.* at 22.)  And she asserts that both Nance and Judge Krantz are on the "side . . . of evil."  (*Id.* at 22.)

   For the same reasons discussed below with regard to the other two judges, *see infra*

Section II-B-1, the court concludes that Judge Krantz is entitled to absolute judicial immunity from Keen's claims. As to Nance, Keen does not identify anything he did that was outside of his role as a prosecutor. To the contrary, all of Nance's alleged actions were "intimately associated with the judicial phase of the criminal process." *See Nero v. Mosby*, 890 F.3d 106, 117–18 (4th Cir. 2018) (citation omitted) (explaining that courts apply a functional approach to see if the actions were "intimately associated" with the judicial process and that where the action falls within that function, a prosecutor is absolutely immune from his actions). *See also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (holding that prosecutors are absolutely immune from civil rights suits for damages under section 1983 for "the initiation and pursuit of a criminal prosecution"). Thus, Nance is also entitled to absolutely immunity from Keen's claims. Because both defendants associated with the third category of claims are immune from suit, it would be futile to allow amendment to add those claims and defendants.

For the foregoing reasons, it would be futile to allow Keen to amend to bring her second amended complaint. That motion to amend (Dkt. No. 11) will be denied. That leaves Keen's first amended complaint as the operative complaint, to which the court turns next.

**B.    Screening of Keen's First Amended Complaint (Dkt. No. 8) Pursuant to 28 U.S.C. § 1915(e)**

Because Keen is proceeding ifp, this court has an obligation to review her complaint and dismiss it "at any time" if it is frivolous, malicious, or fails to state a claim on which relief may be granted or seeks relief against defendants who are immune. 28 U.S.C. § 1915(e)(2)(B)(i)–(ii).

**1.    Claims against the state-court judges fail because the judges have absolute judicial immunity.**

Like Keen's proposed claims against Judge Krantz, Keen's claims against Judge Updike and Judge Harrison are subject to dismissal because those defendants have absolute judicial immunity as to her claims. Judicial immunity clothes judges with absolute immunity from

14

liability in damages for their judicial or adjudicatory acts. *Forrester v. White*, 484 U.S. 219, 225–26 (1988). Judicial immunity is an absolute defense, not merely to liability or damages, but a defense to suit under 42 U.S.C. § 1983. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

There are two possible exceptions to judicial immunity. Specifically, it does not shield a judge for (1) non-judicial acts; or (2) acts taken in the clear absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Neither exception applies here. The actions that Keen challenges are judicial decisions by the judges in the context of custody proceedings or civil proceedings. They thus were judicial acts because they were "function[s] normally performed by a judge" and Keen "dealt with the judge[s] in [their] judicial capacity." *Mireles*, 502 U.S. at 12 (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978) as identifying these two factors used to determine whether an act is a judicial one). Keen does not plausibly allege that the judges lacked jurisdiction to rule, either, so the second exception does not apply. Accordingly, Judges Updike and Harrison are entitled to judicial immunity, and the claims against them will be dismissed with prejudice.

**2. Claims against defendant Terry fail because Keen alleges insufficient facts to state a claim.**

The allegations against Terry are minimal and do not state a valid claim. In the amended complaint, Keen merely alleges that Terry was acting in a fiduciary capacity and that she "failed to investigate and disclose critical financial records, . . . enabling the concealment of estate assets." (Att. to Am. Compl. 3, 9.) In her second amended complaint, which the court is not permitting to be filed, Keen adds that Terry was "impeded" by Reynolds, who directed Terry to tell plaintiff that the "small estate" was closed." (2d Am. Compl. 19.) Apparently, Terry did so. Keen suggests that Terry "needed to find it within herself to stand up against Judy Reynolds." (*Id.*) Even when coupled with the allegation that Terry failed to discover or disclose "criminal financial records," (Att. to Am. Compl. 9), these allegations do not rise to the level of a

constitutional violation.  So, Keen has failed to state a valid § 1983 claim against Terry.  Nor do the allegations against Terry state any obvious claim under state law.  Thus, all claims against her will be dismissed.

Although it might have been possible to add more facts to the first amended complaint to state a claim against Terry, Keen has now filed four different complaints (two of which have been disallowed), but even considering all the allegations in those complaints, she has failed to state a claim against Terry.  Because Keen has had ample opportunity to state a claim against Terry and has failed to do so, all claims against Terry will be dismissed with prejudice.

### 3.  Keen's claims against defendant Reynolds fail to state a federal claim.

The final defendant named by Keen is the Clerk of Court for the Bedford County Circuit Court, Judy Reynolds.  The claim against Reynolds is that she interfered with Keen's access to the court, primarily by refusing to file documents that Keen submitted to the probate court.  In her amended complaint, Keen alleges that Reynolds "obstructed [Keen's] efforts to file probate documents/requests by repeatedly misdirecting requests or denying that probate remained open, or that it legally can be added upon or re-opened."  (Att. to Am. Compl. 7.)  She further states that "all estate related submissions were rejected without legal justification."  (*Id.*)

As noted, the court treats the amended complaint as asserting claims against all defendants in both their official and personal capacities.  As for the official-capacity claims against Reynolds, the clerk of a circuit court is a constitutional officer in Virginia, and, as such, is considered an officer of the Commonwealth.  *Vollette v. Watson*, 937 F. Supp. 2d 706, 714 (E.D. Va. 2013).  Any claims for money damages against her in her official capacity are thus barred by Eleventh Amendment immunity.  *See id.*  Accordingly, any claims for damages against Reynolds in her official capacity will be dismissed.

With regard to claims seeking future injunctive relief or brought against Reynolds in her

individual capacity, the court notes that similar allegations could potentially state a claim. Specifically, allegations that a state court clerk refused to file documents submitted by a litigant, at least where state law gave the clerk "no discretion" to refuse to file papers,[8] could potentially support a § 1983 claim against the clerk for interfering with access to a court.[9] *McCray v. State of Maryland*, 456 F.2d 1, 4–6 (4th Cir. 1972); *see Lewis v. Casey*, 518 U.S. 343, 351–53 (1996) (discussing the right generally).

But a plaintiff's right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, to state a constitutional claim of denial of access to the courts, a plaintiff must allege facts showing that the challenged action has actually "hindered [her] efforts to pursue" a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351. Specifically, the plaintiff must identify in her complaint a "nonfrivolous," "arguable" legal claim, along with the potential remedy that claim sought to recover, that was lost because of the defendant's alleged interference. *Christopher*, 536 U.S. at 415–16 (quoting *Lewis*, 518 U.S. at 353). Stated differently, the cause of action in the underlying action, "whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* at 415.

Keen has alleged generally that Reynolds would not permit her to file probate documents after Keen learned that Judge Updike's denial of her motion was "final." (Att. to Am. Compl. 7.)

---

[8] In some circumstances an official like a clerk of court may be entitled to immunity for her actions, such as when she is merely following a judicial officer's instructions or where the actions complained of "were taken in the discharge of [her] lawful duties as court clerk—not in neglect or violation of those duties." *McCray v. State of Maryland*, 456 F.2d 1, 4–5 & nn. 10–11 (4th Cir. 1972) (discussing both possibilities).

[9] *McCray* also held that a claim could be stated even if the denial of the right of access was negligent, but the Fourth Circuit has squarely held that a negligent denial of access no longer states a § 1983 claim after *Daniels v. Williams*, 474 U.S. 327 (1986). *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995). The abrogation of that portion of *McCray* does not foreclose Keen's claim, however, because she clearly alleges that Reynolds intentionally refused to file papers she submitted to the court.

But she has not identified, with any specificity, a "nonfrivolous," "arguable" legal claim, along with the potential remedy she sought to recover, that was lost because of the alleged interference. Absent such allegations, Keen has failed to state a claim against Reynolds. Accordingly, the court concludes that her federal claims against Reynolds, too, must be dismissed.

It is possible, however, that Keen could provide more specific details about her nonfrivolous claims such that she may be able to state a claim. Thus, the court will dismiss the claim against Reynolds *without prejudice*.

If Keen wants to amend, she shall file a fourth proposed amended complaint not later than forty-five days after entry of this order. The fourth amended complaint may name Reynolds as a defendant and may not include any other defendants, and it must include only the factual matter that is relevant to her claims against Reynolds. It must be a new pleading, complete in all respects, which stands by itself without reference to any earlier filed-complaint or attachments. Alternatively, Keen may file a notice declining to amend, in which case the court will enter a final judgment, which would allow Keen to file an immediate appeal to the United States Court of Appeals for the Fourth Circuit. *See Britt v. DeJoy*, 45 F. 4th 790 (4th Cir. 2022) (explaining that a party may not appeal from an order that dismisses claims without prejudice grants leave to amend).

## C. Keen's Other Motions

Both in this case and in another case Keen filed the same day, which the court already has dismissed, Keen continues to file motions, documents, and other materials with the Clerk. *See generally* Docket; *see also generally* Docket in *Keen v. Keen*, Case No. 7:25-cv-475 (W.D. Va.). The remaining pending motions in this case are addressed below. They consist of: (1) three motions Keen has titled as "emergency motions" or seeking expediency (Dkt. Nos. 3, 9, 12); and (2) three procedural motions—a motion to seal the case (Dkt. No. 10), a motion to consolidate

cases (Dkt. No. 13), and a motion for leave to file electronically (Dkt. No. 15).[10]

### 1. Keen's "Emergency" Motions (Dkt. Nos. 3, 9, 12)

Keen has filed two nearly identical motions titled as "emergency motions" seeking preliminary injunctive relief, which also are pending before the court.  (Dkt. Nos. 3, 9.)  In them, she requests an injunction from this court, "enjoining enforcement of any state court orders entered without due process, including but not limited to . . . custody orders" issued by the JDR court and "gag orders, restrictions on access, or probate determinations issued by the Bedford County Circuit Court."  (1st Emergency Mot. 1–2, Dkt. No. 3; 2d Emergency Mot. 2 (using very similar verbiage).)  She asserts that the enforcement of those orders is causing her ongoing and irreparable harm, including "unlawful interferences" with her parental rights.  (1st Emergency Mot. 2; 2d Emergency Mot. 2.)  Similarly, her motion for expediency (Dkt. No. 12) urges this court to act quickly, and it also contains additional factual allegations

The court takes no action on the factual allegations or her assertions of likely harm, but if she believes that she or her children are in danger, she should contact the appropriate law enforcement authorities.  Further, because the court has now ruled on and dismissed her claims, any request for expediency in this case is moot.  As for her requests that the court take some action to enjoin any state court custody proceedings or any orders from the probate court, these

---

[10] Keen also has filed other documents, but they are not titled as motions.  Some of the other documents are: (1) a federal form for requesting an audio recording in federal court, which Keen is improperly using to seek an audio recording from the state court (Dkt. No. 20); (2) federal forms to be used to file complaints of judicial misconduct or disability against federal judges, which she has improperly used to file against the judges she has named as defendants (Dkt. No. 18); and (3) a one-page document titled as a "Sanction in relief" that says the courts have power and authority "to punish for abuse of judicial process improper purpose misconduct" and states, "These issues need to be addressed."  (Dkt. No. 16.)  The court acts in response to motions that request specific relief or request that the court take a specific action.  Accordingly, the court does not address these documents.  She also has filed a petition under 28 U.S.C. § 2254 (Dkt. No. 19), but that type of petition is used for a person convicted in state court to challenge their conviction after exhausting state-court remedies.  Such a petition must be docketed as a separate civil case.  It is not a filing to be considered as part of a civil rights action.

requests will be denied.  Most importantly,[11] to the extent that these claims seek relief relevant to the dismissed defendants and the custody-related claims, that relief cannot be granted considering the court's dismissal of the claims against those defendants.  This is so because to obtain such relief a plaintiff must show, among other things, a likelihood of success on the merits of the claims that could lead to a permanent injunction.  *See Jensen v. Md. Cannabis Admin.*, 151 F. 4th 169, 174 (4th Cir. 2025).  Obviously, in light of the dismissal of all her claims, Keen has not shown a likelihood of success on the merits.  *Cf. id.; see also In re Microsoft Corporation Antitrust Litigation,* 333 F.3d 517, 525 (4th Cir. 2003) (explaining that preliminary injunctive relief cannot be granted if it is not relief that could be issued in a final injunction in the case), *abrogated on other grounds by eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006).

## 2. Keen's procedural motions (Dkt. Nos. 10, 13, 15.)

Turning to the remaining motions, which are largely procedural, the court addresses first Keen's motion to seal.  (Dkt. No. 10.)  In it, she asks that the court seal the entire case because of unspecified "alarming and detrimental occurrences" that have raised safety concerns for her and her children.  The court will grant her motion to the extent it seeks to keep under seal any

---

[11] Because that reason is sufficient to deny the declaratory and injunctive relief Keen seeks, the court does not address other grounds that might also require denial of those requests for relief, such as the applicability of the *Rooker-Feldman* doctrine.  The doctrine, from *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), directs that district courts do not have subject-matter jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced."  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The Fourth Circuit and district courts within it have applied the doctrine to bar claims seeking relief like that sought in Keen's emergency motions.  *E.g.*, *Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 F. App'x 278, 291 (4th Cir. 2013) (holding that, because the plaintiff's "due process claim is a mere pretext for the real focus of the [c]omplaint, which challenges the validity of records and proceedings of the North Carolina courts that resulted in the termination of the [plaintiff's] parental rights," the *Rooker-Feldman* doctrine bars consideration of that claim); *Johnson v. Byrd*, No. 1:16CV1052, 2016 WL 6839410, at *7 (M.D.N.C. Nov. 21, 2016), *aff'd*, 693 F. App'x 219 (4th Cir. 2017); *Davis v. Singer*, No. 4:13cv7, 2014 WL 12598862 (E.D. Va. Aug. 5, 2014) (concluding that the *Rooker-Feldman* doctrine precluded consideration of plaintiff's civil rights complaint, which effectively challenged the termination of his parental rights, and explaining that "a plaintiff may not seek a reversal of a state court judgment simply by recasting his complaint in the form a civil rights action pursuant to 42 U.S.C. § 1983") (quotation and citation omitted); *Powell v. Williams*, No. 5:14-CV-282, 2014 WL 3809964, at *3 (E.D.N.C. July 14, 2014) (holding that, "to the extent such [child custody or child support] matters have been determined by the state court, this court is . . . barred by the *Rooker–Feldman* doctrine from reviewing the state court's decisions").

portions of the case already sealed by the court, but sealing of the entire case is not appropriate given the public's right of access to court information.  If Keen has specific motions or portions of motions that she believes need to be sealed, she may file a renewed motion to seal but must specify the documents she wants sealed and must provide a redacted version of the document, if appropriate.  *See* W.D. Va. Gen. R. 9.

Keen also has filed a motion requesting electronic filing privileges in this case.  (Dkt. No. 15.)  She offers no explanation as to why, but the court presumes it is to more easily file documents.  The decision of whether to permit an unrepresented party permission to utilize the court's Case Management/Electronic Case Filing (CM/ECF) system is committed to the court's discretion. *See* Fed. R. Civ. P. 5(d)(3)(B)(i).  This case is significantly limited after the court's rulings herein, and Keen may elect not to proceed forward as against the only possible remaining defendant, Reynolds.  Thus, there is no great need to allow CM/ECF privileges at this point.

Lastly, Keen also asks to consolidate this case with the other case she filed on the same date, *Keen v. Keen*, Case No. 7:25-475.  (Dkt. No. 13.)  At this point, *Keen v. Keen* is closed, although Keen has filed a motion for reconsideration of the court's order of dismissal and continues to file documents in that case, too.  Nonetheless, because that case is closed, there is no basis for consolidation, and the court need not even consider whether consolidation would be proper or appropriate.  That motion will be denied without prejudice.  The court will consider her request for consolidation in the context of the other case, if and when the court re-opens it.

### III.  SUMMARY AND CONCLUSION

For the foregoing reasons, the court will allow Keen to proceed ifp and will grant Dkt. Nos. 6 and 7 and deny Dkt. Nos. 17 as moot. The court will not permit Keen to file her second or third amended complaints, to add the additional plaintiffs, or to add additional defendants in this lawsuit because amendment would be futile.

As for the operative complaint—her first amended complaint (Dkt. No. 8)—the court will dismiss with prejudice claims against defendants Judge Harrison, Judge Updike, and defendant Terry.  The court will dismiss all federal claims against Reynolds without prejudice, and it declines to exercise jurisdiction over any state-law claims.  If Keen wants to file an amended complaint against Reynolds only, she may do so.

The court will grant in part her motion to seal (Dkt. No. 10), and it will otherwise deny it and will deny her remaining motions (Dkt. Nos. 3, 9, 12, 13, and 15).  An appropriate order will be entered.

Entered: October 30, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge